UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-0299-MWF (JCx)                    Date:  December 6, 2022
Title:    Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

]Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [25]

Before the Court is Defendant Tokyo Broadcasting System Television, Inc.'s Motion to Dismiss (the "Motion"), filed on July 15, 2022.  (Docket No. 25).  Plaintiff Superama Corporation, Inc. dba USA Sumo filed an Opposition on October 3, 2022.  (Docket No. 28).  Defendant filed a Reply on October 31, 2022.  (Docket No. 31).

The Court has read and considered the papers on the Motion and held a hearing on November 14, 2022.

The Motion is **GRANTED**, and this action is **DISMISSED** *without prejudice*, because the Court lacks subject matter jurisdiction.

The same parties appeared before this Court in a suit involving the *exact same series of events* three years ago.  (("Prior Action") Case No. 2:19-cv-03059-MWF (JCx)).  The Court dismissed the Prior Action because Plaintiff sought relief for copyright infringement based on conduct that occurred entirely in Japan.  None of the facts have changed.  The only differences between this action and the Prior Action are the claims for relief.  Plaintiff now argues that, based on the same facts, Defendant violated a different statutory section of the Copyright Act, thereby giving this Court federal question jurisdiction over its United States copyright claim and supplemental jurisdiction over its Japanese copyright claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-0299-MWF (JCx) | Date:  December 6, 2022 |
| Title:     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc. | |

It is an "undisputed axiom that United States copyright law has no extraterritorial application." *See Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994).  Plaintiff's invocation of a different section of the Copyright Act fails to convince this Court that Defendant's alleged violations occurred in the United States.  Therefore, Plaintiff fails to state a claim under United States copyright law and the Court lacks supplemental jurisdiction over Plaintiff's Japanese copyright claims.

## I.   BACKGROUND

### A. Facts Giving Rise to Plaintiff's Claims

The Complaint alleges the following facts, which the Court takes as true and construes in the light most favorable to Plaintiff.  *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).  The Court also takes judicial notice of the complaint in the Prior Action as it provides some of the background details that were left out of the Complaint in this action.

Plaintiff organizes, stages, presents, and promotes sumo wrestling in the United States.  (Corrected Amended Complaint ("CAC") ¶ 4 (Docket No. 17)).  Defendant is a television broadcasting and media company located in Japan.  (*Id.* ¶ 5).

On May 12, 2018, Plaintiff held its hallmark competition, the US Sumo Open, in Long Beach, California, which resulted in the creation of videos and photographs of the event at the direction of USA Sumo (the "Copyrighted Work").  (Prior Complaint (Docket No. 1) ¶¶ 5, 17, 19).  Plaintiff owns a federal registration of the Copyrighted Work per submission on February 13, 2019.  (*Id.* ¶ 6).  The material was available for viewing on USA Sumo's website and on its YouTube channel, but not for download.  (*Id.* ¶ 4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-0299-MWF (JCx)                    Date:  December 6, 2022
Title:       Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

    On January 17, 2019, Defendant inquired with Plaintiff as to potentially licensing some of the Copyrighted Work for rebroadcast on television throughout Japan.  (*Id.* ¶ 22).  Plaintiff provided Defendant with a licensing fee quote, which detailed the costs for reproducing a highly limited portion of the Copyrighted Work, but Defendant did not respond to the quote.  (*Id.* ¶¶ 23-24).  Instead, on January 26, 2019, "it became apparent that [Defendant] had downloaded the entire footage of '2018 US Sumo Open – Best Matches with Commentary," without knowledge consent or permission, from YouTube and then, edited it down and produced a 125 second 'segment' which it then rebroadcasted throughout [Japan] . . . ."  (*Id.* ¶ 25).  Defendant also materially altered the Copyrighted Work, without permission, with Japanese titles and text.  (*Id.*).  The broadcast was not authorized by, and no payments were made to, Plaintiff.  (*Id.*).

    Plaintiff adds allegations in the CAC in this action regarding the means by which Plaintiff believes Defendant was able to download the Copyrighted Work from YouTube.  Plaintiff alleges that YouTube employs "a series of technological protection measures to make it more difficult" for viewers to download copyrighted work.  (CAC ¶ 16).  These technological measures applied to the allegedly downloaded Copyrighted Work.  "On information and belief," Plaintiff alleges that Defendant went to Superama's website and/or its YouTube channel and employed "hacking and stream ripping" technology to "circumvent YouTube's technological protection measures, stripping the work of its technological protection measures."  (*Id.* ¶ 17).  Further, "[o]n information and belief," Plaintiff alleges that Defendant applied these hacking techniques to Plaintiff's "servers in the United States," to permit an unauthorized download of the Copyrighted Work.  (*Id.* ¶ 18).

    Based on these allegations, Plaintiff asserts four claims for relief; one violation of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. §§ 1201, 1203) based on circumvention of a technological measure that effectively controls access to a copyrighted work and three violations of the 1970 Copyright Law of Japan based on provisions concerning circumvention of technological protection measures and infringement on economic and moral rights.  (CAC ¶¶ 27-46).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-0299-MWF (JCx)                                Date:  December 6, 2022
Title:     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

### B. Prior Action

Plaintiff previously sued Defendant in this Court over the exact same series of events for copyright infringement under the United States Copyright Act (17 U.S.C. §§ 106, 501).  This Court dismissed the Prior Action for lack of subject matter jurisdiction.  *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. CV 19-3059-MWF (JCx), 2019 WL 6879744, at *1 (C.D. Cal. Aug. 20, 2019), *aff'd*, 830 F. App'x 821 (9th Cir. 2020).  After the Ninth Circuit affirmed, Plaintiff unsuccessfully sought certiorari.

The rationale for dismissal in the Prior Action was that all of the relevant acts of copyright infringement occurred in Japan, and therefore, United States copyright law did not apply.  In affirming this Court's decision, the Ninth Circuit explained that Plaintiff "advance[d] a highly technical argument that infringement occurred in the United States because an exact copy of the footage was made on YouTube's server before it was downloaded in Japan." *Superama*, 830 F. App'x at 824 (9th Cir. 2020).  The Ninth Circuit ***rejected*** that argument, holding "[t]here is [] no basis for finding jurisdiction where downloaded material is stored in the United States, but all infringing activity takes place in another country."  *Id.*

Plaintiff now makes precisely the same argument but cites to a different section of the Copyright Act to argue that because the relevant activity is now "hacking" or "stream ripping" YouTube's technological measures, rather than downloading (i.e., infringing), the Court should conclude that the relevant act occurred in the United States.  (*See* CAC ¶ 3) ("[T]his lawsuit involves one overall scheme of infringement that took place both in the U.S. (hacking and YouTube ripping) and one part that took place in Japan (broadcast, reputation harm, *etc.*")).

## II.  LEGAL STANDARD

"Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-0299-MWF (JCx) | **Date:** December 6, 2022 |
| **Title:** Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc. | |

court." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)). A jurisdictional attack under Rule 12(b)(1) may be "facial or factual." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (internal citation omitted). In a facial attack, the complaint's allegations must be accepted as true. *Id.* But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In that case, facts tending to prove or disprove jurisdiction "are not afforded presumptive truthfulness." *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

At the hearing, there was some ambiguity over whether the Motion was premised on a facial or factual jurisdictional attack. Plaintiff's counsel suggested that additional facts could cure the jurisdictional defect while Defendant's counsel emphasized that additional factual allegations should not have any impact on the analysis. The Court agrees with Defendant and views the Motion as a facial attack on jurisdiction. Therefore, the Court has assumed the truth of the facts asserted in the CAC, and as explained below, does not believe additional allegations could cure the defect.

### III. **DISCUSSION**

As an initial matter, the Court notes that it is tempted to summarily dismiss this action as a classic example of improper claim splitting. *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together.") (citing *Restatement (Second) of Judgments* § 24(2) (1982) (all actions arising from the same transaction or series of transactions are regarded as constituting a single cause of action)).

In the CAC, Plaintiff affirmatively raises issue and claim preclusion and attempts to explain why it does not apply here. As for claim preclusion, Plaintiff contends that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-0299-MWF (JCx) | **Date:** December 6, 2022 |
| **Title:** Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc. | |

the prior action did not result in a judgment on the merits because it was dismissed for lack of jurisdiction. (CAC ¶ 12). However, claim-splitting is a "subspecies" of claim preclusion. *Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.*, No. 13-CV-03677-JST, 2013 WL 10448869, at *2-3 (N.D. Cal. Oct. 22, 2013). Claim-splitting is different from claim preclusion in that it does not require a final judgment on the merits in the first suit. *Id.* But like res judicata, claim splitting applies when the claims arise out of the same nucleus of common facts. *See Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 13-C-3229, 2013 WL 361810, at *1, 3 (N.D. Ill., Jan. 20, 2013) ("Because the accused products are *exactly* the same in this scenario despite the plaintiff alleging new infringement *theories*, these claims arise from the same transactional facts and cannot be brought in a separate lawsuit between the same two parties.") (emphasis in original); *Adaptix, Inc. v. Amazon, Inc.*, No. CV 15-01379-PSG, 2015 WL 4999944, at *11 (N.D. Cal., Aug. 21, 2015) (precluding plaintiff from litigating infringement contentions that were brought or could have been brought in earlier cases).

However, because the issue was neither raised by Defendant nor briefed by either party, the Court will decline to dismiss based on the fact that Plaintiff has clearly split claims that arise out of the same nucleus of facts into two successive suits.

Turning to the question of extraterritoriality, Plaintiff argues that the long-standing principle that "the United States copyright laws do not reach acts of infringement that take place entirely abroad" does not apply to this action because although the *infringement* of its Copyrighted Works occurred in Japan, the *circumvention* of technological measures protecting its works occurred in the United States. (Opposition at 14). Plaintiff spends much of its brief chiding Defendant for failing to recognize this distinction. (*See id.* at 12-15). However, it is clear to the Court that Defendant recognizes the distinction; it simply argues it's a distinction without a difference. (*See* Motion at 6) ("All steps in the process from downloading (i.e., hacking or ripping) the subject material to broadcasting it, took place in Japan. Therefore, none of the alleged acts of misconduct are subject to United States copyright law.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-0299-MWF (JCx)            **Date:** December 6, 2022
**Title:**     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

      Plaintiff's new United States copyright claim arises under 17 U.S.C. § 1201. That statutory section is part of the DMCA. The DMCA was enacted to comply with the World Intellectual Property Organization ("WIPO") Copyright Treaty and the WIPO Performances and Phonograms Treaty, as well as to update copyright law to keep pace with particulars of the world of the Internet. 4 *Nimmer on Copyright* § 12A.01-02 (2022). The DMCA consists of five titles, the first of which is referred to as the WIPO Treaties Act, which was tacked onto the end of the existing Copyright Act as Chapter 12. *Id.* § 12A.02. The WIPO Treaties Act adds strictures against circumvention of technologies protecting copyright and rights in copyright management information. *Id.* Specifically, as relevant here, § 1201 provides: "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a).

      Plaintiff contends that the extraterritoriality assessment for infringement claims under 17 U.S.C. § 106 is irrelevant for anti-circumvention claims under 17 U.S.C. § 1201. (Opposition at 16). Plaintiff cites to *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), for its contention that extraterritoriality is determined section-by-section of a statute. In *Nabisco*, the Supreme Court parsed the RICO statute to determine which of the predicate acts applied extraterritorially. *Id.* at 338-339; *see also Morrison v National Australia Bank, Ltd.*, 561 U.S. 247 (2010) (holding that § 10(b) of the Securities Exchange Act did not apply extraterritorially although, by its plain language, § 30(b) did apply to foreign acts). As such, Plaintiff implores this Court to employ *Nabisco*'s two-part test: (1) examining whether the statutory provision applies extraterritorially on its face or (2) if the case involves a domestic application of the statute. (Opposition at 16-17) (citing *Nabisco*, 579 U.S. at 337). Defendant argues that "there is no logical reason to apply the [] *Nabisco* RICO analysis to [the] present case." (Reply at 2). But even if it does apply, Defendant contends, that the Court should reach the same result. (*Id.* at 5).

      The Court disagrees with Defendant that *Nabisco's* two-step extraterritoriality test is limited to its RICO analysis. For instance, in applying *Nabisco*'s test to determine whether the Alien Tort Statute gives federal courts jurisdiction to hear certain civil actions filed by aliens, the Supreme Court recently noted its "precedents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-0299-MWF (JCx)            **Date:** December 6, 2022
**Title:**     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

'reflect a two-step framework for analyzing extraterritoriality issues.'" *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1936 (2021) (citing *Nabisco*, 579 U.S. at 337).

Though the Court does not view the extraterritoriality assessment for infringement claims as entirely irrelevant, it acknowledges that whether certain provisions of the Copyright Act apply extraterritoriality may not ***necessarily*** apply to the entire statute. *See IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 121 (D.D.C. 2018) (noting that a case concerning extraterritoriality of circumvention claim under 17 U.S.C. § 1201 had "no bearing on how to evaluate whether a reproduction claim under 17 U.S.C. § 106(1) is improperly extraterritorial"). However, the Court has identified at least one case in which another California district court assumed without much discussion that the DMCA does not apply extraterritorially. *See M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-CV-1424-CAB (RBB), 2014 WL 12026065, at *6 (S.D. Cal. June 4, 2014) ("If the modification occurred in South Korea or in another foreign nation, then the DMCA would have no application, because 'United States' copyright laws have no application to extraterritorial infringement.'") (citing *Subafilms*, 24 F.3d at 1095). The Court is unaware of any binding authority and, apart from this case, even any persuasive authority addressing the precise issue.

Therefore, out of an abundance of caution, the Court will assume that Plaintiff is correct in arguing that the first step of *Nabisco* must be assessed on a section-by-section basis. But that assessment will nonetheless take into account the long-standing principle that United States copyright law does not have extraterritorial effect.

Under *Nabisco*, courts first must presume that a statute applies only domestically, unless the "statute gives a clear, affirmative indication" that rebuts this presumption. 579 U.S. at 337 (internal citation omitted). Second, where the statute does not apply extraterritorially, a plaintiff must establish that "the conduct relevant to the statute's focus occurred in the United States." *Id.* "[T]hen the case involves a permissible domestic application even if other conduct occurred abroad." *Id*

With respect to the first *Nabisco* step, while the Act need not include an explicit statement that it applies abroad to rebut the presumption against extraterritoriality, there must be a "clear indication" of congressional intent. *See Morrison*, 561 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-0299-MWF (JCx)                    Date:  December 6, 2022
Title:     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

265. Acknowledging that there is no express statement of extraterritoriality contained in the DMCA, Plaintiff advances two arguments to evince a "clear indication" that Congress nonetheless intended § 1201 to apply to wholly foreign acts of circumvention.

First, Plaintiff contends that because the provision's focus is on circumvention of technological measures, and technology can cross borders, the subject matter is inherently subject to non-domestic acts.  (Opposition at 20) (citing *United States v. Ubaldo*, 859 F.3d 690, 700-701 (9th Cir. 2017) ("[S]muggling by its very nature involves foreign countries.").  However, in holding that criminal statutes that prohibited importation of weapons into the United States, by their nature, applied extraterritorially, the Ninth Circuit noted in *Ubaldo* that the legislative history reflected an intent to capture conduct occurring outside the United States.  859 F.3d at 701. Here, the exact opposite intent can be gleaned from the legislative history of the DMCA.

Congress viewed the DMCA as a "protectionist, nationalistic law that only applied territorially."  *See* Adam D. Fuller, *Extraterritorial Implications of the Digital Millennium Copyright Act*, 35 Case W. Res. J. Int'l L. 89, 111-112 (2003) (reviewing the legislative history).  In enacting the anti-circumvention provisions of § 1201, Congress intended to create U.S. remedies in accord with two multilateral WIPO Treaties and hoped that the DMCA would be a "marker for other nations who must also implement these treaties." S. Rep. No. 105-190, at 2 (1998); *see also id.* at 9-10 ("[t]he treaties are best understood as supplements to the Berne Convention").  As the Ninth Circuit recognized in *Subafilms*, the "central thrust of these multilateral treaties is the principle of 'national treatment,'" which "implicates a rule of territoriality" requiring countries to provide the same protection to foreign works afforded domestic works within their borders.  24 F.3d at 1097.  Because the DMCA was specifically enacted to implement WIPO Treaties, under which it is understood that other signatories will enact similar laws that will apply in the signatories' respective territories, the Court does not view the DMCA's technological subject matter as sufficient to rebut the presumption against extraterritoriality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-0299-MWF (JCx)            **Date:** December 6, 2022
**Title:**     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

      As its second basis for rebutting the presumption, Plaintiff argues that the fact that § 1201 applies to "work protected *under this title*," is "another basis for extraterritorial application." (Opposition at 21) (emphasis in original). Plaintiff notes that in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 529 (2013), the Supreme Court interpreted comparable language in § 109(a) of the Copyright Act in such a way as not to impose a geographical limitation. There, the Court held that because a copy "lawfully made under this title" meant a copy lawfully made "in accordance with" the Copyright Act, the "first sale" doctrine applied to copies of a copyrighted work lawfully made abroad. *Id.* at 525. But *Kirtsaeng* was a complex and highly technical opinion regarding statutory interpretation and Plaintiff does not seriously attempt to grapple with any of its reasoning.

      Whatever may be the reach of *Kirtsaeng*, it cannot be said to stand for the proposition that any section in the Copyright Act containing the phrase "under this title" applies extraterritoriality. Indeed, directly contrary to Plaintiff's contention, the exclusive rights section of the Copyright Act (§ 106) also includes such language, and it is well understood that those rights are not protected when the infringing conduct is *wholly* exterritorial. *See* 17 U.S.C. 106 ("[T]he owner of copyright *under this title* has the exclusive rights to…."). Instead, *Kirtsaeng's* basic statutory interpretation conclusion was that the phrase "lawfully made under this title" should be interpreted such that the "lawfully made" phrase could be read to "distinguish copies that were made lawfully from those that were not," while "under this title" is read as setting forth the standard of "lawful[ness]" (*i.e.,* the U.S. Copyright Act)." *See* 568 U.S. at 530. Here too, the phrase referred to by Plaintiff distinguishes works that are "protected" from access by circumvention of technical measures from those that are not, and "under this title" sets for the standard of when a work is "protect[ed]." *See id.* In other words, "under this title" says nothing about whether the *act of circumvention* may occur abroad, but rather, it explains that the protections the provision provides are only afforded to "works that are under U.S. copyright protection." *See* 4 *Nimmer on Copyright* § 12A.03 (2022) ("Section 1201's limitation to works that are under U.S. copyright protection means that, to the extent a technological measure effectively controls access to public domain works, circumvention of that measure does not violate the statute.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-0299-MWF (JCx) | Date:  December 6, 2022 |
| Title:     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc. | |

The Court thus concludes that Plaintiff has not rebutted the presumption against extraterritoriality, and therefore, Plaintiff must satisfy the second part of the *Nabisco* test by demonstrating that this action seeks a domestic application of § 1201.

Courts use a statute's "focus" to determine what constitutes a domestic application. *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018).  The focus of a statute is "the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (internal citations and quotation marks omitted).  Plaintiff argues that the "focus" of § 1201 is the "technological measure" that is protected from circumvention. (Opposition at 18).  Thereby, according to Plaintiff, because the technological measure at issue here was "housed in the U.S. on U.S. servers, on U.S. websites, and on a U.S. streaming service," this action seeks domestic application of § 1201.  (*Id.*).  The Court disagrees.

First off, for an element that Plaintiff claims to be the "focus" of the provision, the CAC says remarkably little about the "technical measure" even in place here. Indeed, the CAC offers not a single supporting fact to explain the allegation that "YouTube employs a series of technological protection measures to make it more difficult for viewers to make unauthorized downloads, reproductions, derivatives, *etc.*, of copyrighted works." (CAC 16).  It is not even clear here what the technological measure is, let alone where or how that technological measure was actually implemented.  ***Regardless***, the clear focus of the provision is not keyed just to the technical measure protecting the copyrighted work, but rather it is focused on the ***circumvention*** of such measures to gain ***access*** to copyrighted work.  *See* 4 *Nimmer on Copyright* § 12A.03 (2022) ("[T]he key word here is 'access.'").  Indeed, the primary case Plaintiff relies on acknowledges this broader focus.  *See Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) ("The 'focus' of [§] 1201(a)(1) is to prevent circumvention of technological measures to gain access to copyrighted works."); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440 (2d Cir. 2001) (referring to § 1201(a)(1)(A) as "the anti-circumvention provision").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-0299-MWF (JCx)            **Date:** December 6, 2022
**Title:**     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

      Plaintiff insists that the Court should rely on *Synopsys* to decide this action. However, *Synopsys* only serves to underscore Defendant's arguments. There, the Court rejected the defendant's extraterritoriality argument as a red herring, where "although [the defendant was] a California-based company with engineers operating in the United States, the access to Synopsys' software occurred through its servers in China." *Synopsys*, 401 F. Supp. 3d at 1073. The defendant contended that because the "'access' technically occurred abroad," enjoining such access would violate rules against extraterritoriality. *Id.*

      The *Synopsys* court summarily dismissed this argument, noting that the California-based company clearly had "gain[ed] access to copyrighted works by circumventing technological access controls" in the United States. *See id.* Therefore, *Synopsys* demonstrates that the **location of the servers** housing the content does not determine where the act of circumvention and subsequent access take place. Here too, the fact that Defendant may have made contact with servers located the U.S., says little about where the circumvention and subsequent access to the copyrighted work actually occurred. Further, as Defendant points out, the case *Synopsys* cites for its conclusion, *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018), simply reinforces the widely accepted notion that the transmission of copyrighted material from overseas defendants ***into*** (not out of) the United States will be deemed a domestic act. (*See* Reply at 3-4).

      As a practical matter, the Court rejects the notion that the "access" or "circumvention" here occurred in the United States simply because the content that was allegedly pirated was stored on U.S servers. Plaintiff alleges that Defendant "hacked" or "steam ripped" its video by circumventing YouTube's technological measures that prevent downloading. (CAC ¶ 17). Though Plaintiff does not itself define these concepts, another court has defined "stream ripping" as a method "whereby software tools, browser plugins or special websites are used to store [streamed] music or audio-visual content, such as YouTube videos, offline for later replay." *HB Prods., Inc. v. Faizan*, No. CV 19-00487 JMS-KJM, 2022 WL 1523604, at *2, n. 1 (D. Haw. May 13, 2022) (citing João P. Quintais & Joost Poort, *The Decline of Online Piracy: How Markets—Not Enforcement—Drive Down Copyright Infringement*, 34 Am. U. Int'l L.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-0299-MWF (JCx)                   Date:  December 6, 2022**
**Title:     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.**

Rev. 807, 813 (2019) (noting that stream ripping creates a copy akin to a download). Assuming that Defendant installed such a plugin or tool on its systems in order to effectuate the circumvention, it appears that the use and instillation of that software was inevitably done in Japan.

At the hearing, Plaintiff's counsel suggested that his client should be afforded the opportunity to amend the CAC to add facts to establish that, as a ***technical*** matter, the circumvention occurred in the United States.  However, the Court only noted (in its tentative opinion) the conclusory nature of the technical allegations in the CAC to emphasize that even if the Court was willingly to engage with the nuances of Plaintiff's argument, it would not be able to do so given the lack of details alleged about how the circumvention actually took place.  But the Court is ***not*** willing to accept Plaintiff's theory, as a matter of law, that the location of the circumvention occurs where the allegedly pirated content is ***stored***.  It was precisely this type of highly technical argument that this Court, and the Ninth Circuit, rejected in the Prior Action.  *See Superama*, 830 F. App'x at 824 (9th Cir. 2020) (rejecting this Plaintiff's "highly technical argument" that infringement occurred in the United States, reasoning that "[t]here is [] no basis for finding jurisdiction where downloaded material is stored in the United States, but all infringing activity takes place in another country").  In accordance with the Ninth Circuit's reasoning, the Court determines that there is no basis for finding jurisdiction where stolen material is stored in the United States, but all other circumventing actives take place in another country.

Indeed, it would make little sense to conclude that the infringement (i.e., the download) occurred in Japan but that the circumvention (i.e., stream ripping) occurred in the United States.  That conclusion would inevitably lead to an influx of copyright cases in which plaintiffs add circumvention claims to their wholly foreign infringement claims in order to invoke federal jurisdiction.  Plaintiff has not convinced the Court that was Congress's intent.  Nor does the Court view that outcome as desirable as it would mean that plaintiffs would frequently ask federal district courts to apply foreign copyright laws, which in turn, would inevitably lead to routine (and inherently burdensome) motions to dismiss based on *forum non conveniens*.  As another district court aptly noted, "American courts should be reluctant to enter the bramble bush of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 22-0299-MWF (JCx) | Date: December 6, 2022 |
| Title: Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc. | |

ascertaining and applying foreign law without an urgent reason to do so." *ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 867, n.20 (E.D. Cal. 1992), *aff'd in part, rev'd in part, on other grounds, sub nom. ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289 (9th Cir. 1993) ("Even if subject matter jurisdiction did exist over plaintiff's claim for violation of Mexican copyright law, the court would decline to exercise jurisdiction on *forum non conveniens* grounds . . . because exercise of jurisdiction over such a claim would work an extreme hardship on the court in discerning and applying Mexican law.") (citing *Papers Operations Consultants Int'l Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975)).

And Plaintiff's breaking-and-entering analogy does not convince the Court otherwise. Plaintiff cites to *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 947 (9th Cir. 2010), which in turn cites to the DMCA's legislative history, to explain that § 1201 violations are the "electronic equivalent of breaking into a locked room in order to obtain a copy of a book." (Opposition at 19). Thereby, Plaintiff argues, that because **the lock** is in the United States, the operative conduct occurred in the United States. (*Id.*). Not so. The *MDY* court cites additional legislative history that elaborates on this analogy and explains that the § 1201(a) provisions are "roughly analogous to making it illegal to break into a house **using a tool**, the primary purpose of which is to break into houses." 629 F.3d at 947 (emphasis added). Hence, the focus of the anti-circumvention provisions is not on the location of the lock (i.e., the technical measure protecting the work), but rather, on the location of the tool used to circumvent those measures.

In sum, the Court cannot conclude that the circumvention at issue here happened anywhere but Japan. While Defendant's system might have communicated with servers located in the United States in some fashion, the alleged circumvention and subsequent access to the work was initiated and completed all from the comfort of Defendant's home in Japan. *Cf. Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) ("[T]he potential infringement was only completed in Canada once the signal was received and viewed"); *Nestle*, 141 S. Ct. at 1937 (2021) "([T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-0299-MWF (JCx)          **Date:** December 6, 2022
**Title:**     Superama Corporation, Inc. v. Tokyo Broadcasting System Television, Inc.

involved in the case.") (internal citation omitted) (emphasis in original). Ultimately, the Court rejects Plaintiff's attempt to parse the words of the Copyright Act so finely as to create an entirely separate regime for circumvention than that which has been established for infringement. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1491 (2021) (Kagan J., dissenting) ("[J]udges interpreting statutes should follow ordinary meaning, not literal meaning.") (citing *McBoyle v. United States*, 283 U.S. 25, 26 (1931) (in ordinary speech, "vehicle" does not cover an aircraft, even though "etymologically it is possible to use the word" that way)).

Therefore, Plaintiff still has not persuaded the Court that it seeks a domestic application of United States copyright law.

Finally, although the Court tentatively suggested it would also grant the Motion on *forum non conveniens* grounds, the Court instead declines to reach the issue. Perhaps, if the Court were deciding the issue, it would be inclined to grant the request made by Plaintiff's counsel at the hearing to allow for leave to amend or for limited discovery given the parties have not established a robust record on the many *forum non conveniens* factors. But in light of the ruling on the statutory interpretation issue, it is unnecessary to go down that path. The Court notes, however, that the fact that Defendant certainly has persuasive *forum non conveniens* arguments tends to bolster the Court's conclusion on the statutory interpretation issue. As noted, a contrary holding would lead to a particularly challenging *forum non conveniens* analysis — not only in this case, but inevitably, in future cases.

Accordingly, because the Court determines that it lacks subject matter jurisdiction as a matter of law, the Motion is **GRANTED** *without leave to amend***,** given amendment would be futile. Therefore, this action is **DISMISSED** *without prejudice.*

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment. Local Rule 58-6.