1  Ryan Hamilton (SBN 291349)
2  HAMILTON LAW LLC
   5125 South Durango, Suite C
3  Las Vegas, Nevada 89113
4  (702) 818-1818
   Ryan@HamLegal.com
5
6  James Banker (SBN 317242)
   DIGITAL JUSTICE FOUNDATION
7  210 Flamingo Road, #424
8  Las Vegas, Nevada 89169
   (714) 722-5658
9  JimBanker@Gmail.com
10
   *Attorneys for Plaintiff*
11

12        **IN THE UNITED STATES DISTRICT COURT**
13       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
14                   **WESTERN DIVISION**

15
16  SUPERAMA CORPORATION, INC. D/B/A    Case No. 2:22-cv-00299-MWF (JCx)
    USA SUMO,
17                *Plaintiff*,             **Plaintiff Superama Corp.'s
                                          Opposition to the Motion to Dismiss
18        vs.                             (Dkt.

19                                        **Motion Hearing Date**: Oct. 24, 2022
20  TOKYO BROADCASTING SYSTEM             **Motion Hearing Time**: 10 a.m. Pacific
    TELEVISION, INC., DOES 1-10,          **Courtroom**: 5A
21                *Defendants*.           **Judge:** Hon. Michael W. Fitzgerald
22
23        Plaintiff Superama Corporation, Inc. ("Superama" or "Plaintiff") respectfully

24  requests that this Honorable Court deny the pending motion to dismiss filed by Tokyo

25  Broadcasting System Television Inc.'s ("TBST" or "Defendant"), Dkt.50, for the

    reasons detailed below.
26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................3

STATEMENT OF ISSUES ................................................................................8

ARGUMENT .................................................................................................10

I.   TBST's Claim-Splitting Argument Fails. ...................................10

    A.   The suits were not pending at the "same time." ....................10

    B.   The prior suit was dismissed on jurisdictional grounds. .........12

    C.   The motion's cited authorities are inapposite. .....................14

    D.   The re-filing in good faith. ...............................................15

    E.   The motion does not address the 1367(d) re-filing. ..............16

II.  TBST's Territoriality Argument Fails. .......................................17

    A.   The amended complaint provides additional details. .............17

    B.   TBST does not engage with the appellate ruling. .................18

    C.   The Ninth Circuit's standards are met in the amended complaint. ........19

    D.   The allegations are not conclusory and readily meet *Twombly*. .............20

III. This Court Has Discretion as to Supplemental Jurisdiction. ...............22

IV.  TBST's *Forum Non* Argument Fails. ...................................23

    E.   The suits were not pending at the "same time.**Error!    Bookmark    not defined.**

V.   Leave to Amend and/or Jurisdictional Discovery Should Be Granted If a Pleading is Insufficient. ......................................34

CONCLUSION ...............................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

<u>Ayco Farms, Inc. v. Ochoa</u>,
862 F.3d 945 (9th Cir. 2017). ....................................................................26, 29

<u>Blazevska v. Raytheon Aircraft Co.</u>,
522 F.3d 948 (9th Cir. 2008). ...........................................................................15

<u>Boston Telecomms. Group, Inc. v. Wood</u>,
588 F.3d 1201 (9th Cir. 2009). ..............................................22, 24, 25, 31, 32

<u>Bright LLC v. Best W. Int'l</u>,
2017 U.S. Dist. LEXIS 19335 (D. Kan. Feb. 10, 2017).....................................24

<u>Carijano v. Occidental Petroleum Corp.</u>,
643 F.3d 1216 (9th Cir. 2011). ..............................22, 23, 24, 25, 26, 27, 32

<u>Ceramic Corp. of Am. v. Inka Maritime Corp.</u>,
1 F.3d 947 (9th Cir. 1993). ...............................................................................26

<u>Cooper v. Tokyo Elec. Power Co.</u>,
860 F.3d 1193 (9th Cir. 2017). ..............................................23, 25, 30, 31, 32

<u>Cunningham v. Ford Motor Co.</u>,
413 F. Supp. 1101 (S.D. Cal. 1976). ................................................................24

<u>CYBERsitter, LLC v. P.R.C.</u>,
805 F. Supp. 2d 958 (C.D. Cal. 2011). .............................................................31

<u>DiFederico v. Marriott Int'l, Inc.</u>,
714 F.3d 796 (4th Cir. 2013). ....................................................................27, 28

<u>Dole Food Co. v. Watts</u>,
303 F.3d 1104 (9th Cir. 2002). ....................................................................22, 30

<u>Duha v. Agrium, Inc.</u>,
448 F.3d 867 (6th Cir. 2006). ...........................................................................32

<u>Dupree v. Valero Energy Corp.</u>,
2003 U.S. Dist. LEXIS 19353 (E.D. La. Oct. 29 2003).....................................24

Ex parte Chas. Pfizer & Co.,
    225 F.2d 720 (5th Cir. 1955). ........................................................................23

Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.,
    972 F.3d 1101 (9th Cir. 2020). ...............................................................25, 30

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947)........................................................................................24

HB Productions, Inc. v. Faizan,
    2022 U.S. Dist. LEXIS 86761 (D. Haw. May 13, 2022). ......................... 16

Headrick v. Atchison, T. & S.F.R. Co.,
    182 F.2d 305 (10th Cir. 1950). ......................................................................24

IMAPizza, LLC v. At Pizza Ltd.,
    334 F. Supp. 3d 95 (D.D.C. 2018)..........................................................15, 16

Jones v. IPX Int'l Equatorial Guinea, S.A.,
    920 F.3d 1085 (6th Cir. 2019). ......................................................................23

Kiobel v. Royal Dutch Petro. Co.,
    569 U.S. 108 (2013)........................................................................................20

Kirtsaeng v. John Wiley & Sons, Inc.,
    568 U.S. 519 (2013)........................................................................................21

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001). ......................................................................25

Manu International, S.A. v. Avon Products, Inc.,
    641 F.2d 62 (2d Cir. 1981). ...........................................................................27

MDY Indus., LLC v. Blizzard Entm't, Inc.,
    629 F.3d 928 (9th Cir. 2010). .........................................15, 18, 19, 20, 21

Monegro v. Rosa,
    211 F.3d 509 (9th Cir. 2000). ..................................................................25, 30

Morrison v Nat'l Australia Bank, Ltd.,
    561 U.S. 247 (2010)...........................................................................14, 18, 20

Morse v. Frederick,
    551 U.S. 393 (2007).......................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

Nebenzahl v. Credit Suisse,
   705 F.2d 1139 (9th Cir. 1983). ....................................................................26

Nestle USA, Inc. v. Doe,
   141 S. Ct. 1931 (2021)........................................................................... 16, 18

PDK Labs. Inc. v. DEA,
   362 F.3d 786 (D.C. Cir. 2004).....................................................................17

Peter Starr Prod. Co. v. Twin Continental Films, Inc.,
   783 F.2d 1440 (9th Cir. 1986). ....................................................................15

Piper Aircraft Co. v. Reynolds,
   454 U.S. 235 (1981)............................................................................... 24, 27

Ratha v. Phatthana Seafood Co.,
   35 F.4th 1159 (9th Cir. 2022). ....................................................................16

Reid-Walen v. Hansen,
   933 F.2d 1390 (8th Cir. 1991). ....................................................................27

RJR Nabisco, Inc. v. European Cmty.,
   579 U.S. 325 (2016).............................................................14, 17, 20, 21

Rundquist v. Vapiano SE,
   798 F. Supp. 2d 102 (D.D.C. 2011).............................................................27

Schertenleib v. Traum,
   589 F.2d 1156 (2d Cir. 1978). ....................................................................23

Schexnider v. McDermott Int'l,
   817 F.2d 1159 (5th Cir. 1987). ....................................................................27

Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,
   549 U.S. 422 (2007).............................................................................. 23, 25

Subafilms, Ltd. v. Mgm-Pathe Communs. Co.,
   24 F.3d 1088 (1994) (en banc). .............................................................15, 29

Superama Corp. v. TBS,
   2019 U.S. Dist. LEXIS 219561 (C.D. Cal. Aug. 20, 2019). ...................15

Superama Corp. v. TBS,
   830 F. App'x 821 (9th Cir. 2020)..........................................................15, 18

<u>Synopsys, Inc. v. AzurEngine Techs., Inc.,</u>
    401 F. Supp. 3d 1068 (S.D. Cal. 2019). ...........................................................12, 19

<u>Synopsys, Inc. v. Ubiquiti Networks, Inc.,</u>
    2017 U.S. Dist. LEXIS 130070 (N.D. Cal. Aug. 15, 2017). ...................................19

<u>Synopsys, Inc. v. Ubiquiti Networks, Inc.,</u>
    2018 U.S. Dist. LEXIS 14147 (N.D. Cal. Jan. 29, 2018).........................................19

<u>Tuazon v. R.J. Reynolds Tobacco Co.,</u>
    433 F.3d 1163 (9th Cir. 2006). ...............................................................................29

<u>United States v. Hussain,</u>
    972 F.3d 1138 (9th Cir. 2020). ...............................................................................17

<u>United States v. Ubaldo,</u>
    859 F.3d 690 (9th Cir. 2017). .................................................................................20

<u>WesternGeco LLC v. ION Geophysical Corp.,</u>
    138 S. Ct. 2129 (2018).......................................................................................17, 18

<u>Zenger-Miller, Inc. v. Training Team, GmbH,</u>
    757 F. Supp. 1062 (N.D. Cal. 1991).......................................................................15

### <u>Statutes</u>

17 U.S.C. § 104.......................................................................................................21

17 U.S.C. § 106.......................................................................................................21

17 U.S.C. § 1201...........................................................................................12, 18, 20, 21

17 U.S.C. § 1203.......................................................................................................21

17 U.S.C. § 501.......................................................................................................21

28 U.S.C. §1404.......................................................................................................23

### <u>Other Authorities</u>

"IP Judgments Database," Intellectual Property High Court.......................22, 28

"Judgments of the Supreme Court," Supreme Court of Japan. .........................22, 28

"Jurisdiction," Intellectual Property High Court...............................................28

1

## <u>Treatises</u>

2  MOORE'S FEDERAL PRACTICE – CIVIL...................................................................24

3  RESTATEMENT (SECOND) OF CONFLICT OF LAWS..........................................24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superama Opp. to TBST's Second Motion to Dismiss

# STATEMENT OF ISSUES[1]

1. <u>Claim-Splitting</u>:

    a. Whether the threshold requirement that the two actions be pending in the same court at the same time were met as between the 2019 and 2022 actions.  (**<u>No</u>**, the 2019 action was dismissed well before the 2022 action was filed).

    b. Whether the final decision in the 2019 action had preclusive effect such that its disposition would have been able to bar the 2022 action.  (**<u>No</u>**, the 2022 action did not constitute a determination on the merits of a copyright action / element / affirmative defense.)

2. <u>Territoriality</u>: Whether the Ninth Circuit's standard permitting cross-border hacks reaching into the U.S. to circumvent technological protection measures is met.  (**Yes**, the amended complaint meets this standard.)

3. <u>Supplemental Jurisdiction</u>: Whether this Honorable Court has discretion to decline supplemental jurisdiction on the Japanese copyright claims.  (**Yes**, the Ninth Circuit intimated as much.)

4. *<u>Forum Non Conveniens</u>*

    a. Whether there is a strong presumption in favor of Superama in its home forum.  (**Yes**, because Superama is located here in its home forum where the hacking was consummated.)

---

[1] All emphasis added unless otherwise indicated.  All statutory citations are to Title 17 of U.S. Code unless otherwise indicated.  All "Dkt." cites are to documents filed in this case, unless otherwise indicated by a separate case number.  Documents are cited by their docket-stamped pagination, not the internal pagination used by the filer.  For example, the last page of TBS's motion to dismiss would be cited as Dkt. 25 at 20.

b.  Whether the public-interest and private-interest factors decisively overcome the strong presumption.  (**No**, the relevant factors weight the other way – against disimsisal.)

5.  <u>Leave to Amend & Jurisdictional Discovery</u>

a.  Whether, if this Court concludes there is an insufficiency in the pleading, leave to amend should be granted.  (**Yes**, because Plaintiff could add more facts.)

b.  Whether limited jurisdictional discovery targeted at the specific concerns of the Court, if any, should be permitted.  (**Yes**, to facilitate resolution of any questions the Court has.)

# ARGUMENT

## I.    TBST's Claim-Splitting Argument Fails.

TBST's motion argues that Superama's claims are barred by the doctrine of improper claim splitting.  Dkt.50 at 15-18.  TBST's motion is incorrect – overlooking essential and key components of claim-splitting doctrine.  Importantly, this Honorable Court had *sua sponte* noted that the doctrine of claim-splitting might be applicable here in its prior order but did not rule upon the issue because no Party had briefed it.  Dkt.33 at 5-6 (noting the doctrine of "improper claim splitting" but declining to rule upon it because "because the issue was neither raised by Defendant nor briefed by either party").

As the Central District's cases show, this Honorable Court is well-versed with claim splitting, in part because of a raft of public-access / disability cases where certain firms have attempted to skirt California's procedural state requirements for bringing such claims.  See, e.g., Williams v. Kim Vo Salon, 2025 U.S. Dist. LEXIS 108201, at *14 (C.D. Cal. June 6, 2025) (Fitzgerald, J.).  Yet, what's happened here is quite different – claims were re-filed after dismissal without a merits determination.  This is not improper claim-splitting.

## A. The suits were not pending at the "same time."

TBST has invoked the "doctrine of claim-splitting."  E.g., Mendoza v. Amalgamated Transit Union Int'l, 30 F.4th 879, 886 (9th Cir. 2022); Graham v. Dupont de Nemours, Inc., 2025 U.S. Dist. LEXIS 24741, at *5 (C.D. Cal. Feb. 11, 2025) (Aenlle-Rocha, J.) ("improper claim splitting"); Frazier v. Evans, 2025 U.S. Dist. LEXIS 19956, at *14-15 (C.D. Cal. Feb. 3, 2025) (Fitzgerald, J.) ("rule against claim splitting").  In the Ninth Circuit, the rule against improper claim splitting has a threshold requirement that the two suits be the same in four respects: "two separate actions involving the *same* subject matter at the *same* time in the *same* court and against the *same* defendant."  Mendoza, 30 F.4th at 886 (9th Cir. 2022).

If the two lawsuits are *not* the same in all four of these respects – [1] same subject, [2] same time, [3] same court, and [4] same defendant – then claim-splitting doctrine does not apply. For example, where the two actions were not in the *same court* – "one complaint in state court and another in federal court" such that the actions were in "separate courts" – the Ninth Circuit has reversed dismissal under claim-splitting doctrine. E.g., <u>Henderson v. Bonaventura</u>, 649 F. App'x 639, 641 (9th Cir. 2016); <u>Sanzaro v. Ardiente Homeowners Ass'n LLC</u>, 513 F. App'x 646, 647 (9th Cir. 2013) (similarly reversing district court "because the other action is not in the same court as the present action"); <u>Graham v. Dupont de Nemours, Inc.</u>, 2025 U.S. Dist. LEXIS 24741, at *8 (C.D. Cal. Feb. 11, 2025) (Aennle-Rocha, J.) ("Further, it is clear the claim splitting doctrine does not apply when one action is in state court and the other in federal court.").

It's not just the *same* court. The two actions must be in the same court *at the same time*. <u>Mendoza</u>, 30 F.4th at 886 (9th Cir. 2022); <u>It's My Seat, Inc. v. Woodley</u>, 2023 U.S. App. LEXIS 26325, at *3-4 (9th Cir. Oct. 4, 2023) ("*same* time"); <u>Indigo Grp. USA, Inc. v. Ralph Lauren Corp.</u>, 690 F. App'x 945, 946 (9th Cir. 2017) ("*same* time"); <u>Henderson v. Bonaventura</u>, 649 F. App'x 639, 641 (9th Cir. 2016) ("*same* time"). This same-time requirement has been characterized as a "**concurrent pendency requirement**" – requiring that the actions be pending ***simultaneously***. E.g., <u>Pollok v. Vanguard Fiduciary Tr. Co.</u>, 803 F. App'x 67, 69-70 (9th Cir. 2020); <u>Indigo Grp. USA, Inc. v. Ralph Lauren Corp.</u>, 690 F. App'x 945, 946 (9th Cir. 2017) (claim-splitting applies while the prior action "was *ongoing*"); <u>Ariola v. Raytheon CA Techs. Corp.</u>, 2023 U.S. Dist. LEXIS 158377, at *3 (C.D. Cal. Sep. 6, 2023) (**Fitzgerald, J.**) ("*two **simultaneous** actions*"); <u>Padilla v. Cty. of L.A.</u>, 2023 U.S. Dist. LEXIS 153608, at *3 (C.D. Cal. Aug. 28, 2023) (Birotte, J.) ("The second related case […] is ***currently pending*** before the undersigned").

If the two actions are not concurrently pending – *i.e.*, not in the same court at the same time – then claim-splitting doctrine doesn't apply.

JUDGE OLGUIN emphasized this distinction when a litigant overlooked it: "Bursor's reliance on Slusher v. Big Lots Stores, Inc., 2018 WL 10164064 (N.D. Cal. 2018) is misplaced. […] Significantly, **Slusher involved *simultaneous* class actions**, see id. at *1, rather than the situation here[.]" Sharpe v. GT'S Living Foods, LLC, 2024 U.S. Dist. LEXIS 162381, at *10 n.7 (C.D. Cal. June 21, 2024) (Olguin, J.). Authority involving *simultaneous / concurrently pending cases* in inapposite to cases, as here, where the cases were never pending at the same time.

Thus, claim-splitting's threshold requirements are not met here. Here, the cases were never before this Honorable Court at the same time. The 2019 action – No. 2:19-cv-03059-MWF-JC – was dismissed and judgment was entered on **August 20, 2019**. 2019 Action Dkt.31-1 at 6. This 2022 action – No. 2:22-cv-00299-MWF-JC – was initiated on **January 13, 2022**. Dkt.1. Accordingly, because claim-splitting's threshold requirement that the actions be pending in the same court at the same time are not met, claim-splitting simply doesn't apply.

**B. The prior suit was dismissed on jurisdictional grounds.**

In addition, *even if* the threshold requirements of claim-splitting were met here, TBST's motion should still be denied because it overlooks that the 2019 dismissal was a non-merits jurisdictional dismissal that did not have preclusive effect. In the Ninth Circuit, "[t]o determine when such improper claim-splitting is present, we borrow from the test for claim preclusion." Mendoza, 30 F.4th at 886 (9th Cir. 2022); Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688-689 (9th Cir. 2007) reversed on other grounds Taylor v. Sturgell, 553 U.S. 880 (2008) ("To determine whether a suit is duplicative, we borrow from the test for claim preclusion.").

And, this Honorable Court correctly determined that it did not have adjudicatory authority to determine the merits of the claims in the 2019 action. 2019 Action Dkt.31-1 at 1 ("Plaintiff fails to establish that the Court has subject matter jurisdiction over the action."); see generally id.

1    As such, the 2019 action did not make any merits determinations but rather

2    simply and correctly determined that U.S. *infringement* law didn't apply to

3    infringements consummated in Japan.  Those findings carried no *res judicata* / claim-

4    preclusive consequences.  See, e.g., Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1, 824

5    F.3d 1161, 1166 (9th Cir. 2016) ("Any finding made by a court when the court has

6    determined that it does not have subject matter jurisdiction carries no *res judicata*

7    consequences."); Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1106

8    (9th Cir. 1999) ("If the court dismissed the state claims for lack of jurisdiction, those

9    claims would not be *res judicata* and Plaintiffs could pursue them" such as by

10   correcting the jurisdictional defect.); Feminist Women's Health Ctr. v. Codispoti, 63

11   F.3d 863, 869 (9th Cir. 1995) ("An exception to the general rule of claim preclusion

12   exists where 'the plaintiff was unable to rely on a certain theory of the case or to seek

13   a certain remedy or form of relief in the first action because of limitations on the subject

14   matter jurisdiction of the courts.'"); see also Fed. R. Civ. P. 41(b) (noting that a

15   dismissal for non-merits grounds such as "lack of jurisdiction, improper venue, or

16   failure to join a party" does not operate as adjudication on the merits because the merits

17   haven't been determined).

18       Here, applying the doctrines of claim preclusion to the 2019 judgment, we see

19   that the 2019 judgment had no preclusive effect: there was no merits determination of

20   an element of a claim or affirmative defense of U.S. copyright infringement.  2019

21   Action Dkt.31-1.  Likewise, there was no jurisdiction.  Accordingly, the first action –

22   *even if* it had been simultaneously pending with this present one – wouldn't have been

23   subject to claim-splitting doctrine because its resolution was to simply determine that

24   U.S. infringement law didn't apply.  Even when *final*, the 2019 action cannot have

25   preclusion effect.  For this separate and independent reason, claim-splitting doctrine is

26   inapplicable here.

27

28

**C. The motion's cited authorities are inapposite.**

TBST cites inapposite authorities that simply overlook these key aspects of claim-splitting doctrine.

Doljenko is inapposite.    There, the two cases in question were proceeding *simultaneously*.  Doljenko v. City of L.A.,, 2021 U.S. Dist. LEXIS 93516, at *5 (C.D. Cal. May 17, 2021) (Fisher, J.) ("[T]he Court concludes there is *no justification for allowing these two separate cases to proceed **simultaneously*** based on what plainly is a single Section 1983 attack on Zinaida's warrantless arrest.").  The 2019 action is *not* proceeding simultaneously.  Likewise, in Doljenko, the court graciously permitted the plaintiff to consolidate all their claims into a single complaint in the first-filed action, which was not (and is not) possible here because the 2019 action and this action are not *concurrently pending*.  See id. at *6 (noting "dismissal will not prejudice Plaintiffs as they may file a First Amended complaint in *Dolzhenko I*, **which is currently pending**").

Mars is inapposite.  It's a *claim-preclusion* case, not a *claim-splitting* case.  Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 618 (Fed. Cir. 1995) ("On appeal, Mars argues that the principles of claim preclusion do not bar its action against Nippon Conlux[.]"); id. ("This case turns on general principles of claim preclusion,[.]").  The claim-preclusion dispute in Mars – of party privity and of breadth of the common nucleus of operative fact – just aren't at issue here.  See id. at 619 ("privity"), 620 ("same set of transactions").  Even though an out-of-context quote may seem to be applicable – "a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits[,]" id. at 619 – that quote is merely refencing referencing the general principle of claim preclusion not overruling the Ninth Circuit's requirement that claim-splitting doctrine is inapplicable unless the two actions are simultaneous in the sense of being concurrently pending in the same court at the time.  That's not so here.

Adams supports Superama.  TBST cites the Adams but overlooks that Adams itself expressly states the concurrent-pendency requirement: "Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter ***at the same time in the same court*** and against the same defendant."  Adams, 487 F.3d at 688 (9th Cir. 2007).  Exactly.  Because the two cases here were not simultaneously pending before this Honorable Court, there's no need to apply the claim-preclusion-by-reference aspect of claim-splitting.  Yet, even if this Court did, as discussed above, the dismissal was not a merits determination, so it did not have preclusive effect.

Indigo is inapposite and supports Superama.  Indigo involves a second suit filed while the first suit "was ongoing[.]"  Indigo, 690 F. App'x at 946 (9th Cir. 2017).  And Indigo reiterates the *same-time* requirement: "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter *at the same time in the same court* and against the same defendant."  Id.

The remainder of TBST's authorities, see Dkt.50 at 17-18, are directed toward arguing that the two cases present the same transaction / common nucleus of operative fact.  Yet, *even if* that were true, that would not support granting the motion because (1) claim-splitting only applies where the two actions were *simultaneous* in the sense of concurrently pending in the same court at the same time and (2) the prior action wasn't made on the merits, so that dismissal simply isn't preclusive.

**D. The re-filing in good faith.**

It's worth noting that the re-filing was done in good faith.  The refiling wasn't a "surprise" as TBST has falsely asserted.  9th.Cir.Answer.Br.2.  Superama's nonprofit counsel had been in negotiations with TBST's present counsel for months before refiling. TBST simply never offered more than $3,000. Insofar as TBST invites extra-merits consideration of cost and settlement, the sticking point here was not an aggressive million-dollar demand (which Superama's nonprofit counsel never made and told TBST's counsel was too high), but rather TBST's intransigence.

1    Even though Superama was willing to settle for under $25,000, TBST wouldn't
2    budge from a final offer of $3,000.  So, without any offer to compensate just a portion
3    of the losses sustained to Superama's business from an attack that, if perpetuated,
4    would destroy Superama's entire line of business, Superama had no choice but to refile.
5    While Superama strongly preferred not to litigate if TBST would be even remotely
6    reasonable, TBST simply wouldn't offer a reasonable royalty for the scope of what it
7    indisputably did here.

8    **E. The motion does not address the 1367(d) re-filing.**

9        Notably, TBST's motion does _not_ argue that the 2023 action is claim-splitting.
10   See Dkt.50 at 15-18.  At the pre-motion counsel conference, Superama's counsel raised
11   that action and the Parties agreed that its disposition should await the disposition of this
12   motion.   Some background is worthwhile.   When this Honorable Court declined
13   jurisdiction over the Japanese claims, Dkt.33 at 13-15, Superama re-filed some of the
14   Japanese claims in state-court because under 28 U.S.C. § 1367(d), it had to do so even
15   while the appeal was pending.   TBST removed the claims.   Superama believes that
16   TBST has not, and cannot, establish diversity jurisdiction such that the case should be
17   remanded to state court, yet respectfully submits that the disposition of this motion will
18   help the Parties assess the proper procedure on that matter.  Ultimately, TBST has not
19   moved with respect to that claim and this Honorable Court should defer any decision
20   until after disposition here and until after the Parties have a chance to confer and to
21   brief.   All of the reasons for deferring disposition in No. 2:23-cv-02579-MWF-JC
22   detailed in Dkt.14 of that matter remain in place here.   If the Honorable Court is
23   inclined to reach it simultaneously, Superama should receive notice and an opportunity
24   to brief, especially because a motion to remand for lack of diversity jurisdiction would
25   take precedence.   See Madero v. McLane Foodservice, Inc., 2024 U.S. Dist. LEXIS
26   109126, at *9 n.4 (C.D. Cal. June 18, 2024) (Kato, J.) ("Because complete diversity
27   does not exist, the Court declines to address […] claim-splitting.").
28

1    Ultimately, if this instant case proceeds, then it would make sense to simply

2    consolidate the 2023 action with this one. See Fed. R. Civ. P. 42(a); Padilla v. Cty. of

3    L.A., 2023 U.S. Dist. LEXIS 153608, at *5-6 (C.D. Cal. Aug. 28, 2023) (Birotte, J.)

4    (noting discretion to "consolidate both actions").

5                                                    *****

6    For the reasons stated above, TBST's claim-splitting argument fails. TBST has

7    not, and cannot, make show the concurrently-pending requirement because the actions

8    were never concurrently pending – never before this Honorable Court (or any court) at

9    the same time. And, moreover, because the 2019 action could have no preclusive effect

10   as a non-merits determination, claim-splitting doctrine does not apply for a separate

11   and independent reason. The motion to dismiss should be denied.

12

13   **II.    TBST'S TERRITORIALITY ARGUMENT FAILS.**

14   TBST also renews it arguments on extra-territoriality, Dkt.50 at 12-15. Yet,

15   these arguments too are unavailing.

16   **A. The amended complaint provides additional details.**

17   TBST's motion to dismiss does not fairly and accurately state the record. It

18

19   reiterates the false point that "the underlying facts have not changed since Superama

20   brought this case in 2019[.]" Dkt.50 at 13. In some sense, the bird's eye view hasn't

21   changed. Yet, it's simply false to suggest that the allegations have not changed and

22   developed. And, TBST says that "the FAC is still singularly focused on the same

23   underlying acts that this Court and the Ninth Circuit previously confirmed took place

24   outside of the United States." Dkt.50 at 13. Again, that's false. Neither this Honorable

25   Court nor the Court of Appeals addressed the specific allegations regarding cross-

26   border hacking and circumvention. And, the amended complaint provides extensive

27   details about the _protection measure's location in the U.S_, Am. Compl. at 8¶19-12¶25,

28   and the _circumvention targeted into the U.S._, id. at 13¶26-14¶27.

So, the amended complaint gives additional detailed allegations and TBST simply misstates the record and misstates the procedural posture in urging that these facts have been rejected. They haven't been.

And, TBST makes another error – thinking that the _infringement_ and _circumvention_ must arise under the same laws, but they don't need to. The Ninth Circuit has clarified that TBST's position "***rests on the mistaken premise that an infringement claim and a circumvention claim cannot occur in two different places when based on the same factual allegations***." Dkt.38 at 4 (9th Cir. Op.). So, the mere fact that the _infringement_ was consummated in _Japan_ does not bar the fact that _circumvention_ was achieved here in the U.S.

**B. TBST does not engage with the appellate ruling.**

Indeed, there is a glaring omission from TBST's motion: TBST does not cite or engage with ***the Ninth Circuit opinion***. See Dkt.50 at 13-15 (nowhere citing the Ninth Circuit's 2024 memorandum opinion, Dkt.38, or even wrestling with what that opinion entailed for this case upon remand from the Ninth Circuit). TBST just entirely overlooks the Ninth Circuit's opinion.

What the Ninth Circuit decided, on this very issue of domestic application, is critical here. The Ninth Circuit noted that this Honorable Court undertook a very reasonably analogy based upon the legislative history. Dkt.38 at 5 ("Relying on legislative history, the district court reasonably analogized circumventing a technological protection measure to burglarizing a locked house[.]"). Then, the Ninth Circuit held that the operative protection for purposes of determining a domestic application was the location of the _lock_, _i.e._, the technological measures that prevented download – and ***not*** the location of the hacker / hack. Dkt.38 at 5 ("But in this analogy, _the **focus of § 1201(a)(1)'s anti-circumvention provision is the location of the lock**, **not** the location of the tool used to circumvent it_."). These principles are critical to the decision here but are entirely overlooked by TBST's motion.

(This distinguishes 17 U.S.C. § 1201(a) anti-circumvention 17 U.S.C. § 106 claims from copyright infringement, where the location of copying or downloading is key. Dkt.38 at 4 (citing <u>WesternGeco LLC v. ION Geophysical Corp.</u>, 585 U.S. 407, 413 (2018)).

**C. The Ninth Circuit's standards are met in the amended complaint.**

And, indeed, the Ninth Circuit was clear that there only needs to be sufficient pleading to **_infer_** that the lock (or technological protection measure) was located in the U.S.: "If additional factual allegations were offered to permit this element to be inferred, then Superama could adequately allege a permissible domestic application of the DMCA, even if TBS directed the conduct from abroad." Dkt.38 at 6. So, the amended complaint merely need sufficient material to _infer_ that the _lock_ (_i.e._, the technological protection measure is located here).

Here, the operative complaint alleges that the circumvention took place on U.S.-based servers. It specifies that Superama's website and copyrighted materials, protected by YouTube's technological measures, were hosted on servers located in the United States. _See_ Am. Compl. ¶¶ 21, 24-25. The complaint further alleges that Defendant Tokyo Broadcasting System Television, Inc. ("TBS") directed its stream-ripping technology at these U.S.-based servers to bypass the protections. _Id._ ¶ 27. By asserting that TBS's software interacted with and deactivated the technological measures on U.S. servers, Superama plausibly establishes that the circumvention occurred domestically. <u>See id.</u>

Specifically, the amended complaint establishes that Superama is U.S.-based and that its web-hosting service, through ordinary operation, would know this as well and note that most of Superama's traffic was U.S.-based and, as such, would locate the website and technological protection measures that protect the website, _i.e._, the **_locks_**, here in the U.S. Am. Compl. ¶ 21. Moreover, Superama expressly used YouTube's **_locks_** on its U.S.-based website. Am. Compl. ¶ 22. Accordingly, the locks were here.

1    And, YouTube is also located in the U.S. and it, like the web-hosting service,

2 would recognize that Superama's website is U.S.-based and would similarly store the

3 *lock* here.  And, it is these U.S.-based locks that TBST circumvented when it applied

4 hacking techniques to get around them.  Am. Compl. ¶¶ 23-27.  Accordingly, given

5 that the details of the operations of why and how the website and technological

6 protection measures were here in the U.S., why the locks were here in the U.S. and that

7 fact that TBST wrongfully lockpicked *those* locks, under the Ninth Circuit's standards,

8 this states a claim of a cross-border hack and circumvention *into* the U.S. Am. Compl.

9 ¶¶ 19-27.

10    **D. The allegations are not conclusory and readily meet *Twombly*.**

11    TBST characterizes the allegations as conclusory.  They're not.  They give a

12 detailed description of the facts and details of the Superama's website, the web-hosting

13 service, YouTube's protections, YouTube's server processes, and how the

14 circumvention occurred.  Am. Compl.  ¶¶ 19-27.  That's not conclusory – not a mere

15 *recitation of just the element*.  Indeed, TBST's motion overlooks the three key

16 principles of pleading in the *Twombly / Iqbal* regime:

17    1. **<u>Short & Plain Statement Required</u>**: All that is required is under the governing

18       pleading standard is a "***<u>short and plain statement</u>***" that, if taken as true

19       (removing pure recitation of elements), would show "that the pleader is entitled

20       to relief." *E.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal

21       Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

22       claim showing that the pleader is entitled to relief,' in order to 'give the

23       defendant fair notice of what the . . . claim is and the grounds upon which it

24       rests[.]'"); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) ("'short and plain

25       statement of the claim showing that the pleader is  entitled to relief'"); *Erickson

26       v. Pardus*, 551 U.S. 89, 93 (2007) ("only 'a short and plain statement of the claim

27

28

Superama Opp. to TBST's Second Motion to Dismiss

showing that the pleader is entitled to relief'"); *Klin v. Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024) (same).

2. **Detailed Allegations Not Required**: A "complaint attacked by a Rule 12(b)(6) motion to dismiss ***does not need detailed factual allegations***[.]" *E.g.*, *Twombly*, 550 U.S. 544, 555 (2007) ("a complaint attacked by a Rule 12(b)(6) motion to dismiss ***does not need detailed factual allegations***"); *Iqbal*, 556 U.S. 662, 678 (2009) ("*As the Court **held** in Twombly*, the pleading standard Rule 8 announces ***does not require 'detailed factual allegations'***); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("**Specific facts are not necessary**[.]"); *Dana v. Idaho Dep't of Corr.*, 2024 U.S. App. LEXIS 13763, at *1-2 (9th Cir. June 6, 2024) ("A complaint 'does not require 'detailed factual allegations[.]'").

3. **Legal Conclusions Alone Insufficient**: Legal conclusions or a "recitation of elements" is insufficient. *E.g.*, *Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'); *id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Sandra Shah v. Ahmc Healthcare, Inc.*, 2024 U.S. App. LEXIS 18047, at *2 (9th Cir. July 23, 2024) ("None of these is a 'legal conclusion couched as a factual allegation' that may be disregarded as conclusory."); Fidler v. Arizona, 2024 U.S. App. LEXIS 8613, at *5-7 (9th Cir. Apr. 10, 2024) (crediting all "nonconclusory allegations" that don't simply recite elements).

TBST's motion overlooks these key principles.  Specifically, it is submitted that detailed allegations are provided.  But, regardless, they are not required.  It is enough to give a short and plaint statement *as long as* its not merely a verbatim recitation of the elements, which this plainly is not.

1

**III.    THIS COURT HAS DISCRETION AS TO SUPPLEMENTAL JURISDICTION.**

2

3       The Ninth Circuit determined that this Honorable Court has supplemental

4   jurisdiction over the Japanese claims.  Dkt.38 at 2 ("Because the district court had

5   federal question jurisdiction over Superama's DMCA claim under 28 U.S.C. § 1331,

6   the district court had supplemental jurisdiction over the Japanese law copyright claims

7   under 28 U.S.C. § 1367(a).").

8       Yet, supplemental jurisdiction is not mandatory, but rather discretionary.  28

9   U.S.C. § 1367(c); Dkt.38 at 3.  If this Honorable Court wishes to decline supplemental

10  jurisdiction within its discretion, then Superama does not contest its decision to decline

    supplemental jurisdiction.

11

12      If, however, this Honorable Court wishes to hear these claims, no research into

13  foreign law will be necessary – as this Court can simply rely _entirely_ upon the Parties

14  to frame the issues, do the research, and present the authorities and arguments.  Indeed,

15  not only is that _appropriate_ as an option, it is _mandatory_:  "In our adversarial system

16  of adjudication, _we follow the **principle of party presentation**_.  […] In both _**civil and**_

17  _**criminal cases**_, _in the first instance and **on appeal**_, we rely on the parties to frame the

18  issues for decision and assign to courts the role of _**neutral arbiter of matters the parties**_

19  _**present**_."  _United States v. Sineneng-Smith_, 590 U.S. 371, 375 (2020) (cleaned up);

    _Greenlaw v. United States_, 554 U.S. 237, 243 (2008) (same).

20

21      The principle of party presentation "applies all the more in a case such as this,

22  involving a s_**pecialized area of civil law and competent, highly experienced counsel**_

23  _**on both sides.**_" E.g., Todd R. v. Premera Blue Cross Blue Shield of Alaska, 825 F.

24  App'x 440, 442 (9th Cir. 2020); Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065,

25  1071 n.8 (9th Cir. 2021) (applying principle of party presentation in copyright case);

26  Dalfio v. Orlansky-Wax, LLC, 2022 U.S. App. LEXIS 21470, *1 (9th Cir. Aug. 3,

27  2022) ("at the Rule 12(b)(1) motion to dismiss phase, and our review is necessarily

28  framed by the parties' arguments on appeal").

Before, this Honorable Court expressed reasonable and understandable concern about the burden to it of determining and applying Japanese copyright law. See Dkt.33 at 14-15. Counsel are sensitive to these burdens – and if this Court retains jurisdiction will facilitate the disposition. (Indeed, the merits issues here are pretty simple.) Yet, if this Court is not assuaged, it can simply decline supplemental jurisdiction and Superama would not contest that declination of supplemental jurisdiction.

## IV.    TBST'S *FORUM NON* ARGUMENT FAILS.

TBST's forum-non argument also fails for largely the same reasons argued before.

### A. There is a strong presumption in favor of the U.S. plaintiff's choice of forum.

TBS argues that the Japanese-law claims brought in Superama's home forum should be dismissed on grounds of *forum non conveniens*. Dkt. 25 at 13-20.

Forum non is an "exceptional tool to be employed sparingly." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002). A forum-non dismissal is an "extraordinary measure[.]" Boston Telecomms. Group, Inc. v. Wood, 588 F.3d 1201, 1210 (9th Cir. 2009). And such dismissals are only appropriate in "exceptional circumstances." Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1224 (9th Cir. 2011).

TBS ignores the strong presumption in favor of the plaintiffs forum and argues, instead, that "an alternate forum is adequate if the defendant is amenable to service of process there." For this claim, TBS cites the 9th Circuit holding in Creative Technology, Ltd. v. Aztech System PTE, Ltd., 61 F.3d 969 (9th Cir. 1995). The problem with this claim is that Creative Tech involved a foreign plaintiff—indeed all the primary parties were located in Singapore—and the court noted that although "there is normally a strong presumption in favor of honoring the plaintiff's choice of forum, a foreign plaintiff's choice is afforded less deference" Creative Tech., 61 F.3d at 703.

1    TBS fails to satisfy its "heavy burden of showing that the [plaintiff's choice of]

2    forum results in oppressiveness and vexation . . . out of all proportion to the plaintiff's

3    convenience." <u>Cooper v. Tokyo Elec. Power Co.</u>, 860 F.3d 1193, 1210-1211 (9th Cir.

4    2017).  The Ninth Circuit has stressed that forum-non dismissal is "an exceptional tool

5    to be employed sparingly[.]" <u>Carijano</u>, 643 F.3d at 1224. It's drastic "because, unlike

6    a mere transfer of venue" under 1404(a), forum non "results in the dismissal of a

7    plaintiff's case." Id.; 17 MOORE'S FEDERAL PRACTICE – CIVIL § 111.71 (2022)

8    ("harsh remedy of dismissal").

9    For that reason, the Ninth Circuit has called forum-non dismissal a "drastic

10   exercise" of a court's power, <u>Carijano</u>, 643 F.3d at 1224, and an "extraordinary

11   measure[,]" <u>Boston Telecomms</u>, 588 F.3d at 1210. By contrast, the "statutory

12   provisions [of Section 1404] are far more liberal than the common law" doctrine of

13   forum non. <u>Cunningham v. Ford Motor Co.</u>, 413 F. Supp. 1101, 1105 (S.D. Cal. 1976).

14   Unless the forum-non factors discussed below weigh "strongly in favor of the

15   defendant, the plaintiff's choice of forum should rarely be disturbed." <u>Gulf Oil Corp.

16   v. Gilbert</u>, 330 U.S. 501, 508 (1947); RESTATEMENT (SECOND) OF CONFLICT

17   OF LAWS § 84 (plaintiff's chosen forum "will not be disturbed except for weighty

18   reasons"). A defendant seeking a forum-non dismissal "bears a heavy burden in

19   opposing the plaintiff's chosen forum." Sinochem, 549 U.S. at 430; <u>Boston

20   Telecomms.</u>, 588 F.3d at 1206 ("Ordinarily [...] will not be disturbed[.]").

21   Here, Superama has chosen its home forum. Dkt. 17 at 2 ¶ 4. Thus, Superama's

22   choice is due even more deference: a plaintiff's choice of forum "is entitled to greater

23   deference when the plaintiff has chosen the home forum." <u>Lueck v. Sundstrand Corp.</u>,

24   236 F.3d 1137, 1143 (9th Cir. 2001). A "plaintiff's choice of forum—particularly a

25   plaintiff's home forum—is entitled to considerable deference." <u>Global Commodities

26   Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.</u>, 972 F.3d 1101, 1112 (9th Cir.

27   2020) (noting "dismissal for forum non conveniens is typically only appropriate where

28   a plaintiff chooses a forum wholly unrelated to the dispute").

1    Indeed, this home-forum advantage rises to the level of a strong presumption.

2    The "forum non-conveniens analysis introduces a presumption that litigation is

3    convenient in the plaintiff's chosen forum when a domestic plaintiff sues at home."

4    Cooper, 860 F.3d at 1210-1211. Even where "most of the relevant documents and

5    physical proof remained in Japan," courts have still found that these considerations did

6    not "outweigh[] [p]laintiffs' interest in suing at home." See id. at 1211. After all, the

7    "convenience by a party who has sued in his home forum will usually outweigh the

8    inconvenience the defendant may have shown." Id. at 1229.

9    Because Superama is suing in its home forum, TBS faces an almost impossible

10   forum-non burden. The standard for forum-non dismissal is whether the defendant has

11   made a "clear showing of facts which . . . establish such oppression and vexation of a

12   defendant as to be out of proportion to plaintiff's convenience[.]" Monegro v. Rosa,

13   211 F.3d 509, 514 (9th Cir. 2000); Carijano, 643 F.3d at 1224 (forum-non dismissal

14   "warranted" when plaintiff chose forum "solely in order to harass"). This forum isn't

15   oppressive or vexatious to TBS: TBS has offices here. Yet, even if this forum were

16   somehow oppressive and vexatious for TBS, that's not enough.

17   TBS would need to show disproportionate oppression and vexation, when in fact

18   it's shown none. TBS doesn't come close, which shouldn't be a surprise: again, TBS

19   has offices here. When a plaintiff sues in their home forum, the required forum-non

20   showing of disproportionate oppression and vexation is an "almost impossible

21   burden[.]" See Nebenzahl v. Credit Suisse, 705 F.2d 1139, 1140 (9th Cir. 1983)

22   ("defendant seeking forum non conveniens dismissal must carry an almost impossible

23   burden in order to deny a citizen access to the courts of" their home).

24   Here, Superama chose to sue in its home forum, Dkt. 17 at 2 ¶ 4, as TBS itself

25   acknowledges, Dkt. 25 at 18. Thus, Superama's choice to initiate "litigation in its home

26   forum [...] is presumptively convenient." Carijano, 643 F.3d at 1227. TBS's motion

27   nowhere engages this strong presumption in favor of Superma, however. E.g., Dkt. 25

28

at 18 (discussing the Parties' residences but nowhere acknowledging or addressing this strong presumption).

TBS is simply ignoring the great deference and doctrinal presumption that suing here in California, in Superama's home forum, is appropriate. Regardless of TBS's oversight, Superama is entitled to a strong presumption that this forum is appropriate and, in turn, the strong presumption creates an almost impossible burden for TBS to demonstrate disproportionate vexation and oppression when TBS has shown none.

**B. The public factors support adjudication here.**

For a "U.S. citizen's choice of forum to be rejected, the private and public interest factors must 'strongly favor trial in a foreign country.'" Ayco Farms, Inc. v. Ochoa, 862 F.3d 945, 950 (9th Cir. 2017). "This showing must overcome the great deference due plaintiffs" because the convenience of a "home forum will usually outweigh the inconvenience the defendant may have shown." Ceramic Corp. of Am. v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993). Here, TBS fails to show that the factors favor, let alone decisively favor, dismissal from Superama's home forum.

TBS thinks that the need to apply Japanese law means that the public-interest factors favor dismissal. Dkt. 25 at 16. In making this unsupported assertion, TBS ignores that "[f]ederal courts are quite capable of applying foreign law[.]" E.g., DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013); Rundquist v. Vapiano SE, 798 F. Supp. 2d 102, 132

(D.D.C. 2011) ("Application of the laws of foreign countries will not overly burden the Court[.]"). Judges and juries "routinely address subjects that are totally foreign to them[.]" Carijano, 643 F.3d at 1224. Thus, the need to apply foreign law is not dispositive: "need to apply foreign

law is not in itself reason to apply the doctrine of forum non conveniens." Schexnider v. McDermott Int'l, 817 F.2d 1159, 1163-1164 (5th Cir. 1987) (citing Piper, 454 U.S. at 260 n.29). In fact, it is "well settled that the fact a federal court may

1    have to apply foreign law is not dispositive on the forum non conveniens inquiry, and

2    does not outweigh more significant" considerations. <u>Reid-Walen v. Hansen</u>, 933 F.2d

3    1390, 1401 (8th Cir. 1991).

4        Given that this forum is Superama's home, the need to apply foreign law is

5    markedly insufficient to meet TBS's almost-impossible burden in seeking

6    extraordinary relief. <u>See, e.g., Manu International, S.A. v. Avon Products, Inc.</u>, 641

7    F.2d 62, 68 (2d Cir. 1981) ("Proof of foreign law [...] is not alone enough to push the

8    balance of convenience strongly in favor of the defendant."). In sum, TBS's "aversion

9    to foreign law [is] overblown[.]" <u>See DiFederico</u>, 714 F.3d at 808.

10       Moreover, the need to apply Japanese copyright law is particularly

11   unburdensome here for two case-specific reasons, one related to Japanese law and one

12   related to copyright law generally.

13       ***First***, the Japanese government provides free English translations of their court

14       decisions online in searchable databases.

15       The Supreme Court of Japan does so. "Judgments of the Supreme Court,"

16   SUPREME COURT OF JAPAN (searchable database). The Tokyo Intellectual

17   Property High Court does as well. "IP Judgments Database," INTELLECTUAL

18   PROPERTY HIGH COURT (same). This free, online, searchable availability is a

19   concrete example of the "litany of resources, techniques, and tools" available to analyze

20   and apply foreign law.

21       See DiFederico, 714 F.3d at 808.

22       ***Second***, like nearly every other nation on Earth, the United States and Japan have

23   "harmonized" their intellectual-property laws to a large extent through accession to

24   international treaties, most prominently the Berne Convention for the Protection of

25   Literary and Artistic Works. <u>See, e.g., Impression Prods. v. Lexmark Int'l, Inc.</u>, 137 S.

26   Ct. 1523, 1539 (2017) (Ginsburg, J., dissenting). The "copyright protections one

27   receives abroad are thus likely to be similar to those received at home, even if provided

28   under each country's separate copyright regime." <u>Id.</u> Thus, contrary to TBS's

1    unsupported assertion, the need to apply foreign law does not meaningfully support its

2    forum-non argument, let alone do so strongly as would be necessary for TBS to prevail

3    under its heavy burden.

4         * * * * *

5         Beyond the need to apply foreign law, TBS also overlooks the strong domestic

6    interests in this dispute. TBS says this "controversy is local to Japan[.]" Dkt. 25 at 17.

7    It also says "California has little interest" here. Dkt. 25 at 17. TBS misunderstands the

8    doctrine.

9         *First*, forum non is not an inquiry into what forum, Japan or California, is in

10   some sense the most local to the dispute—a metaphysical inquiry given the online and

11   cross-border nature of the dispute here.m Rather, the public-interest factors examine

12   whether there is some "identifiable local interest in the controversy, **not** whether

13   another forum also has an interest." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d

14   1163, 1182 (9th Cir. 2006). Yet, of course, this is not a local dispute: Superama is an

15   American entity; TBS is a Japanese

16        entity; and their dispute is a cross-border online dispute.

17        *Second*, TBS overlooks the United States' interest and the Berne Convention,

18   the treaty mentioned above. TBS should be aware of these interests since it relies upon

19   Subafilms, a case that discusses them, for the extraterritoriality issue:

20

21        In 1988, the United States acceded to the Berne Convention for the

22        Protection of Literary and Artistic Works ("Berne Conv."). The central

23        thrust of these multilateral treaties is the principle of "**national treatment**."

24        *A work of an American national first generated in America will receive the*

25        *same protection in a foreign nation* as that country accords to the works of

26        its own nationals.

27

28

Subafilms, 24 F.3d at 1097. Therefore, as a signatory to the Berne Convention, the U.S. has an interest in ensuring that its nationals receive the same level of protection afforded Japanese nationals, *even and especially under Japanese law*.

In addition, both California and the U.S. have an interest in protecting their citizens from hacking on U.S. websites by foreign hackers. See Tuazon, 433 F.3d at 1181-1182 ("States have a strong interest in ensuring the welfare of its residents[.]").

**C. The private factors support adjudication here.**

In a forum-non analysis, there are seven private-interest factors:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

Ayco Farms, Inc, 862 F.3d at 950 (9th Cir. 2017). TBS's motion only addresses four of these seven factors but bears the burden of proof on all of them.

From its view of those four factors, TBS says Japan is "the *most appropriate forum* for this action." Dkt. 25 at 18.

TBS fundamentally misunderstands that forum-non analysis is not a search for "most appropriate" forum. The Ninth Circuit has repudiated the opportunistic attempt to transform a forum-non analysis into a best-venue analysis as a misunderstanding of forum-non: "rather than treating forum non conveniens as an *exceptional* tool to be employed *sparingly*, the district court perceived it as a doctrine that compels plaintiffs to choose the optimal forum for their claim." Monegro, 211 F.3d at 514. That approach, *i.e.*, an optimal-forum approach, is error.

1

2    Yet, here, TBS invites that error. TBS asks this Court to erroneously use a forum-

3    non analysis to require what TBS self-servingly styles as "the most appropriate forum

4    for this action." Dkt. 25 at 18. That's not the question forum non seeks to answer. In

5    other words, TBS invites error. Indeed, forum non is "**not** a doctrine that

6    compels plaintiffs to choose the optimal forum for their claim." Dole Food, 303

7    F.3d at 1118.

8

9    Rather, as TBS overlooks, a "plaintiff's choice of forum—*particularly a*

10   *plaintiff's home forum*—is entitled to considerable deference." Global Commodities,

11   972 F.3d at 1112. After all, TBS's motion entirely overlooks that it must show not

12   merely inconvenience but "oppressiveness and vexation"—indeed, "oppressiveness

13   and vexation" that is "out of all proportion" to Superama's convenience in suing

14   here. Cooper, 860 F.3d at 1210-1211. TBS's burden isn't to identify some hypothetical

15   ideal forum, but to show disproportionate vexation and oppression—when it hasn't

16   shown any oppressive or vexation whatsoever.

17

18   In sum, TBS's bare assertion that Japan is the "most convenient" forum is not

19   only wrong but, even if true, would be irrelevant. TBS simply misses the mark and

20   misconstrues the forum-non inquiry.

21

22   **Turning to the factors**, TBS has not met its heavy burden to show that the

23   factors strongly and decisively favor a forum-non dismissal here.

24

25   *First*, courts consider the residence of the parties and witnesses. TBS argues, in

26   cursory fashion, without citing *any* supporting evidence, that "all the material

27   witnesses" are all in Japan. Dkt. 25 at 18. That's incorrect. Superama's witnesses are

28

in California. And, while TBS is *primarily* in Japan, Superama is *exclusively* in the United States. Superama has no Japanese operations at all.

Also, TBS fails to demonstrate, as required, the "materiality and importance" of each witness. <u>Boston Telecomms.</u>, 588 F.3d at 1210 (abuse of discretion to hold "this private interest factor was neutral when [defendant] provided very little information"). Here, TBS provides insufficient information to meet its burden.

*Second*, the TBS is a multinational corporation with presence in California and offices here as well as American lawyers. Superama has no operations in Japan. Superama has no Japanese lawyers. The convenience difference is quite stark. An American forum gives Superama access to law while requiring litigation in Japan would be an insurmountable obstacle for Superama.

*Third*, on sources of proof, TBS says that because "all of the alleged misconduct took place in Japan, the majority if not all of the relevant evidence is overwhelmingly in Japan[.]" Dkt. 25 at 18-19. Again, that's unsupported and wrong. There's no real dispute as to the fact of infringement, *i.e.*, national broadcast: TBS's own motion acknowledges that TBS aired the work nationwide in Japan without a license. Dkt. 25 at 9. The real potential issues here mainly relate to damages, with evidence split between the U.S. (moral-rights reputational harm) and Japan (royalties and profits). Even if TBS were correct about the evidence, it's argument would prove too much: if foreign evidence "alone were sufficient to dismiss a case for forum non conveniens, American plaintiffs rarely would have the opportunity to prosecute claims against foreign defendants in American courts." <u>CYBERsitter, LLC v. P.R.C.</u>, 805 F. Supp. 2d 958, 966 (C.D. Cal. 2011) ("witnesses and evidence located in China"); <u>Cooper</u>, 860 F.3d at1211 (plaintiff's interest in suing at home outweighed fact that "most of the relevant documents and physical proof remained in Japan").

1

2    *Fourth*, the pertinent question is not the locale of witnesses but rather "whether

3    it has been alleged or shown that witnesses would be **unwilling** to testify[.]" Carijano,

4    643 F.3d at 1231; Duha v. Agrium, Inc., 448 F.3d 867, 877 (6th Cir. 2006) (little weight

5    where "no witness' *unwillingness* has been alleged or shown"). Here, TBS's

6    unsupported statement that "all the material witnesses" are in Japan does not engage

7    the operative question: are these witnesses unwilling or unable to testify? TBS doesn't

8    say, let alone explain why its employees would refuse to testify under court order.

9

10   *Fifth*, TBS claims that it "would also certainly be more expensive to transport

11   these witnesses overseas to testify in California, than to have them testify in Japan."

12   Dkt. 25 at 19. And, TBS stresses the "*possible* inability of these witnesses traveling to

13   California[.]" Id. This too is unsupported and wrong. TBS must make a *factual* showing

14   not just engage in speculative conjecture about possible inability. Boston Telecomms.,

15   588 F.3d at 1210 (must provide "information sufficient to assist the court"). Even

16   where "non-party witnesses [were] located in Japan" thereby creating *some* burden,

17   courts have held that such considerations did not outweigh "Plaintiffs' interest in suing

18   at home." Cooper, 860 F.3d at 1211. And, of course, TBS "fails to consider the other

19   side of the ledger." Carijano, 643 F.3d at 1230. "California is the home forum of"

20   Superama. See id. "Because of the nature of international litigation, each side would

21   incur expenses related to traveling and procuring witnesses in either forum." Cooper,

22   860 F.3d at 1211. Finally, TBS fails to consider common-sense means to diminish any

23   such burden associated with witnesses in Japan, such as videoconference technologies

24   like Zoom that have been adopted by courts and litigants alike.

25

26   *Sixth*, TBS gives no reason to think a judgment would not be enforceable.

27   Indeed, TBS would almost certainly just the reasonable amount and, regardless, TBS's

28   American operations have assets.

1

2          *Seventh*, TBS has not identified any other factor weighing in its favor.

3

4          * * * * *

5

6          In short, none of the private factors support a forum-non dismissal here. TBS has

7    not met *its* burden of demonstrating through a showing of facts that the factors weigh

8    heavily in favor of a dismissal. Indeed, because TBS is trying to dislodge a plaintiff

9    from its own home forum, TBS faces an almost impossible burden of demonstrating

10   not mere inconvenience but disproportionate vexation and oppression from litigation

11         Here. TBS hasn't come close. The drastic and extraordinary result of a forum-

12   non dismissal should be denied.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **V.    LEAVE TO AMEND AND/OR JURISDICTIONAL DISCOVERY SHOULD BE
2          GRANTED IF A PLEADING IS INSUFFICIENT.**

3       ***First***, Superama's counsel have made a good-faith attempt to provide detailed

4  allegations made after significant investigation regarding the contours of TBST's

5  hacking.  And, their understanding is that what they have supplied is sufficient to state

6  a claim of cross-border hacking *into* the U.S. against a U.S. copyright owner on a U.S.

7  website and U.S. servers under Ninth Circuit law.  Yet, if this Honorable Court

8  disagrees and believes in its judgment that the complaint is insufficient, then it is

9  respectfully requested to clarify what, in its judgment, is the deficiency and then grant

10 leave to amend.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (**en**

11 **banc**) ("[I]n a line of cases stretching back nearly 50 years, we have held that in

12 dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant

13 leave to amend even if no request to amend the pleading was made, unless it determines

14 that the pleading could not possibly be cured by the allegation of other facts.'"); Weber

15 v. Allergan, Inc., 621 F. App'x 401, 402 (9th Cir. 2015) ("Accordingly, we conclude

16 that amendment would not necessarily be futile, and an opportunity to amend should

17 be allowed."); Baton v. Ledger SAS, 2022 U.S. App. LEXIS 33183, *6-7 (9th Cir. Dec.

18 1, 2022) ("Following jurisdictional discovery, amendment of Plaintiffs' claims against

19 the Shopify defendants would not necessarily be futile and so should be allowed.").

20      ***Second***, insofar as this case involves complicated questions of technology and

21 nuanced questions related to a convenient forum, leave for jurisdictional discovery

22 should also be permitted insofar as it is targeted at the specific questions concerning

23 the Court.  In its prior order, this Honorable Court fairly noted that it would be inclined

24 to grant jurisdictional discovery if it was included to wade into the issues further.

25 Dkt.33 at 15; see, e.g., Synopsys, Inc. v. Ubiquiti Networks, Inc., 2018 U.S. Dist.

26 LEXIS 14147, *8-10 (N.D. Cal. Jan. 29, 2018) (Beeler, M.J.) (permitting discovery

27 despite dispute over where circumvention had "taken place" when "end user" used a

28 "remote server" to circumvent technological measure);  Doe v. Aylo Glob. Ent. Inc.,

2025 U.S. Dist. LEXIS 92601, at *29 (C.D. Cal. Apr. 15, 2025) (Fitzgerald, J.) ("The Court intends to grant Plaintiff's request for limited, targeted jurisdictional discovery.").

Accordingly, if the motion to dismiss is granted in any respect, leave to amend and to conduct jurisdictional discovery targeted at the specific issues that concern this Honorable Court.

## CONCLUSION

For the foregoing reasons, this Honorable Court should deny TBS's motion to dismiss. In the alternative, it should grant leave to amend and grant jurisdictional discovery targeted at the issues concerning the Court.


Dated: June 9, 2025                   Respectfully submitted,

                                      */s/ Ryan Hamilton*
                                      Ryan Hamilton (SBN 291349)
                                      HAMILTON LAW LLC
                                      5125 South Durango, Suite C
                                      Las Vegas, Nevada 89113
                                      (702) 818-1818
                                      Ryan@HamLegal.com

                                      *Attorney for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

3
    I hereby certify that I served the foregoing via **electronic filing** in CM/ECF.

4
Dated: June 9, 2025                */s/ Ryan Hamilton*

5
                                        Ryan Hamilton

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superama Opp. to TBST's Second Motion to Dismiss